IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PENSION PLAN OF LOCAL UNION
786 RETIREMENT FUND, *et al.*,

Plaintiffs,

v.

LEE LUMBER & BUILDING
MATERIAL CORP, *et al.*,

Defendants.

No. 19-cv-06933

Judge Franklin U. Valderrama

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, a multiemployer pension benefit plan, a multiemployer welfare benefit plan, and members of their respective boards of trustees,[1] have brought suit against Defendants, Lee Lumber & Building Material Corp. (Lee Lumber), Richard Baumgarten, Arthur Rand Baumgarten (together with Richard Baumgarten, the Baumgartens), the Richard Lee Baumgarten Child's Separate Trust (Richard Trust), the A. Rand Baumgarten Child's Separate Trust (Arthur Trust, and together with the Richard Trust, the Child Trusts), DEE-Illinois, LLC (DEE-Illinois) and unnamed other controlled group members of Lee Lumber (collectively, all Defendants), under various provisions of the Employee Retirement Income Security Act of 1974, as amended (ERISA), 29 U.S.C. §§ 1001–1461, as amended by the Multiemployer

---

[1]Plaintiffs are: Pension Plan of Lumber Employees Local 786 Retirement Fund (Pension Fund), Welfare Plan of the Local Union 786 Building Material Welfare Fund (Welfare Fund) and Michael Philipp, Ron Sandack, Michael Yauger, Steven Warnke, Kevin Jarchow, Edward Rizzo, Steven Fisher, Ricky Blevins, Dave Mashek, and Marty Ozinga IV as the members of the Funds' respective Boards of Trustees (collectively, the Trustees).

Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. § 1381 *et seq*. Plaintiffs seek over $4.7 million in withdrawal liability that they allege Lee Lumber incurred by exiting the Plaintiff Pension Fund, and over $2,800 in delinquent contributions to the Plaintiff Welfare Fund. Plaintiffs also seek to hold the Baumgartens, as the owners of Lee Lumber, personally liable for Lee Lumber's withdrawal liability, along with DEE-Illinois as the alter-ego of the Child Trusts and/or the Baumgartens. R. 31, SAC.[2]

Before the Court are Defendants Lee Lumber, the Baumgartens, the Child Trusts' (collectively, Lee Defendants) Motion to Dismiss Plaintiffs' Second Amended Complaint (Lee Motion to Dismiss), R. 39, Lee Mot. Dismiss, and Defendant DEE-Illinois' Motion to Dismiss the Second Amended Complaint (DEE Motion to Dismiss), R. 38, DEE Mot. Dismiss. Both motions are brought pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, both Motions to Dismiss are denied.

## Background

Lee Lumber operated at 633 West Pershing Road, in Chicago, Illinois (the Property).[3] SAC ¶ 13. Before withdrawal on or about November 1, 2018, Lee Lumber was an employer engaged in an industry affecting commerce and was subject to a collective bargaining agreement with the Building Material, Lumber, Box, Shaving, Roofing and Insulating Chauffeurs, Teamsters, Warehousemen and Helpers Union

---

[2]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

[3]The Court accepts as true all of the well-pleaded facts in the SAC and draws all reasonable inferences in favor of Plaintiffs. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

No. 768 (the Union). *Id.* ¶ 66. Under the terms of the collective bargaining agreement, Lee Lumber was required to make contributions to the Pension Fund on behalf of certain of its employees. *Id.*

Lee Lumber was owned by the Baumgartens and operated on property owned by the Child Trusts. SAC ¶¶ 15, 19, 22. Richard Baumgarten is the sole beneficiary, sole trustee, and representative of the Richard Lee Baumgarten Child's Separate Trust. *Id.* ¶ 16. Arthur Rand Baumgarten is the sole beneficiary, sole trustee and representative of the A. Rand Baumgarten Child's Separate Trust. *Id.* ¶ 20.

On or about March 1, 2017, Lee Lumber requested from the Pension Fund an estimate of its withdrawal liability. SAC ¶ 31. On or about June 1, 2017, Lee Lumber contacted the Pension Fund to negotiate a pre-payment of its withdrawal liability based on the March 17, 2017 estimated liability by the Pension Fund's actuary. *Id.* ¶ 32.

In response, on or about June 1, 2017, the Pension Fund sent Lee Lumber a statement of business affairs (SOBA) to determine its controlled group and any entities that could be subject to joint and several liability. SAC ¶ 33. Lee Lumber returned the SOBA to the Pension Fund on or about June 17, 2017. *Id.* ¶ 34. On or about November 20, 2017, the Pension Fund informed Lee Lumber that based on the information provided on the SOBA, Lee Lumber and the Baumgartens were in a controlled group and the Baumgartens were personally liable for the withdrawal liability. *Id.* ¶ 35.

3

On July 18, 2018, Lee Lumber signed a non-binding Letter of Intent (LOI) with Kodiak Building Partners, Inc., (Kodiak), whereby Kodiak would acquire certain assets and assume certain liabilities of Lee Lumber. SAC ¶ 37. On or about July 25, 2018, Lee Lumber contacted the Pension Fund regarding the potential sale of assets to Kodiak pursuant to the LOI. *Id.* ¶ 38. Lee Lumber again requested a settlement of its estimated withdrawal liability. *Id.*

On or about September 1, 2018, the Pension Fund informed Lee Lumber that it would not accept Lee Lumber's offer to settle the estimated withdrawal liability before Lee Lumber triggered such liability. SAC ¶ 39.

Lee Lumber closed on or about November 1, 2018 and auctioned its assets shortly thereafter. SAC ¶ 40. Lee Lumber is no longer engaged in business activities involving Union employees. *Id.* When Lee Lumber closed, it ceased making contributions to the Pension Fund and triggered withdrawal liability on or about November 1, 2018.[4] *Id.* ¶ 41.

On or about November 14, 2018, the Pension Fund sent Lee Lumber a revised statement of business affairs (Revised SOBA) to determine its controlled group and any entities that could be subject to joint and several liability. SAC ¶ 42. Lee Lumber returned the Revised SOBA letter to the Pension Fund, in which Lee Lumber stated that it had recovered more than $260,000 in cash from the auction of its assets. *Id.* ¶ 43.

---

[4]The SAC later states that Lee Lumber stopped making contributions to the Pension Fund on November 30, 2018. SAC ¶ 67. The exact date does not matter for purposes of this Opinion.

Lee Lumber, during all relevant times up to and including the date of withdrawal, leased an office and warehouse facility on the Property. SAC ¶ 48. The parties to the Lease were Lee Lumber and the Baumgartens and/or Child Trusts. *Id.* ¶ 49. During all relevant times, the Property was an asset of the Child Trusts and the Child Trusts allowed Lee Lumber to conduct business operations on the Property. *Id.* ¶¶ 54–55.

Some time prior to January 7, 2019, the Child Trusts mortgaged the Property. SAC ¶ 84. On or prior to January 7, 2019, DEE-Illinois purchased the note under which the Child Trusts had mortgaged the Property. *Id.* ¶ 85. The Child Trusts never made a payment on the note purchased by DEE-Illinois. *Id.* ¶ 87.

On January 7, 2019, the Child Trusts executed a "Deed in Lieu of Foreclosure Agreement" conveying the Property to DEE-Illinois, in partial satisfaction of a note that DEE-Illinois purchased from the mortgagee from whom the Child Trusts had mortgaged the Property. SAC ¶¶ 44, 86. In consideration of the transfer of the Property from the Child Trusts to DEE-Illinois, DEE-Illinois agreed to reduce the debt owed by Lee Lumber to DEE-Illinois by $800,000. *Id.* ¶ 88.

Shortly thereafter, on January 10, 2019, the Pension Fund issued a notice and demand for withdrawal liability (Demand Letter). SAC ¶ 45. No payment was received by the Pension Fund regarding the withdrawal liability assessed against Lee Lumber in the Demand Letter. *Id.* ¶ 72. On March 22, 2019, the Pension Fund sent a notice of default letter to Lee Lumber informing Lee Lumber that it had missed its first payment and that it had 60 days to correct its missed payment or the Pension

5

Fund would default Lee Lumber and all amounts would become immediately due. SAC ¶ 73.

On April 2, 2019, Lee Lumber's counsel timely filed a request for review in accordance with Section 4219(b)(2)(A) of ERISA, 29 U.S.C. § 1399(b)(2)(A). SAC ¶¶ 46, 74. On May 31, 2019, the Pension Fund notified Lee Lumber that its Trustees had reviewed Lee Lumber's request for review and had confirmed the withdrawal, but modified the amount of the withdrawal liability owed to $4,789,377. *Id.* ¶¶ 47, 75. The Pension Fund granted Lee Lumber additional time to cure its default from its original deadline of March 22, 2019, to June 7, 2019. *Id.* ¶ 76. Neither Lee Lumber, nor any member of its controlled group has made any payments to the Pension Fund for withdrawal liability. *Id.* ¶ 77.

The Property is currently for sale by DEE-Illinois and the asking price is $3,200,000. SAC ¶ 89.

The Pension Fund subsequently filed suit against Lee Lumber and the Defendants. The complaint has been amended and the operative complaint is the Second Amended Complaint (SAC). Count I asserts that pursuant to Sections 502(g) and 4301(e) of ERISA, 29 U.S.C. § 1132(g) and 1451 (e), all Defendants are jointly and severally liable for the Withdrawal liability. Count II asserts that all Defendants are liable for the delinquent contributions.

Lee Defendants and DEE-Illinois move separately to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6). Lee Mot. Dismiss; DEE Mot. Dismiss.

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

**Analysis**

ERISA was enacted "to protect employee pension plans from underfunding." *Loc. 705 Int'l Bhd. of Teamsters Pension Fund v. Gradei's Express Co.*, 2020 WL 1530737, at *3 (N.D. Ill. Mar. 31, 2020) (citing *Cent. States. Se. & Sw. Areas Pension Fund v. Midwest Motor Exp., Inc.*, 181 F.3d 799, 803 (7th Cir. 1999)). As amended by the MPPAA, it "requires an employer to make contributions to a multiemployer pension plan 'in accordance with the terms and conditions of such a plan.'" *Bd. of Trs. v. 6516 Ogden Ave, LLC*, 170 F. Supp. 3d 1179, 1182 (N.D. Ill. 2016) (quoting 29

7

U.S.C. § 1145). The MPPAA requires employers who withdraw from a multiemployer pension plan "to contribute to a proportionate share of the plan's unfunded vested benefits." *Gradei's Express*, 2020 WL 1530737, at *3 (citing *Midwest Motor Exp., Inc.*, 181 F.3d at 803). ERISA defines this obligation as an employer's "withdrawal liability." 29 U.S.C. § 1381.

"Withdrawal liability applies not only to the withdrawing employer itself, but also to all other 'trades or businesses' that are under the same umbrella of 'common control.'" *Gradei's Express*, 2020 WL 1530737, at *3 (citing 29 U.S.C. § 1301(b)(1); *Cent. States, Se. & Sw. Areas Pension Fund* v. *SCOFBP, LLC*, 668 F.3d 873, 876 (7th Cir. 2011)). "This is commonly referred to as 'the controlled group provision.'" *Trustees of Suburban Teamsters of N. Illinois Pension Fund v. E Co.*, 2018 WL 1427172, at *3 (N.D. Ill. Mar. 22, 2018) (quoting *Cent. States. Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1372 (7th Cir. 1992)). "This prevents employers from 'fractionalizing' their assets among several entities to avoid liability." *6516 Ogden Ave., LLC*, 170 F. Supp. 3d at 1183 (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Neiman*, 285 F.3d 587, 589 (7th Cir. 2002). "Withdrawal liability was not intended, however, to reach the personal assets of owners or shareholders of a withdrawing employer, absent a showing that they acquired assets to evade withdrawal liability." *Gradei's Express*, 2020 WL 1530737, at *4 (internal citations omitted).

ERISA provides that "all . . . trades and businesses" whether incorporated or not, that are under common control, shall be treated as a single employer. 29 U.S.C.

§ 1301(b)(1). Thus, "each trade or business under common control is jointly and severally liable for the withdrawal liability of any other." *McDougall v. Pioneer Ranch L.P.*, 494 F.3d 571, 574 (7th Cir. 2007). ERISA does not define "trade or business." The Seventh Circuit, however, for purposes of defining what constitutes a "trade or business," has adopted the test articulated in *Commissioner of Internal Revenue v. Groetzinger*, 480 U.S. 23, 35 (1987). *See Cent. States Se. & Sw. Areas Pension Fund v. Messina Prod., LLC*, 706 F.3d 874, 878 (7th Cir. 2013). The "*Groetzinger* test" "asks whether the entity's activities 'are performed (1) for the primary purpose of income or profit; and (2) with continuity and regularity.'" *Gradei's Express*, 2020 WL 1530737, at *4 (quoting *Messina Prod.*, 706 F.3d at 878). "These criteria are intended to distinguish a trade or business from passive investments or hobbies." *Id.*

## I. Lee Motion to Dismiss

As a preliminary matter, although the Lee Motion to Dismiss is purportedly brought on behalf of all Defendants, the arguments for dismissal only pertain to the Baumgartens and the Child's Trusts. *See generally* Lee Mot. Dismiss. Therefore, the Court construes the Lee Motion to Dismiss as brought only on behalf of the Baumgartens and the Child's Trust, and not Lee Lumber.

## A. Forfeiture of Right to Contest Membership in Controlled Group

Plaintiffs first argue that Lee Lumber and its controlled group's liability in this case is fixed and not subject to challenge because all Defendants failed to initiate arbitration with respect to the withdrawal liability within the statutory time frame required by Section 4221(a) (29 U.S.C. § 1401(a)(1)). R. 41, Pls.' Resp. Lee Mot.

9

Dismiss at 3–7; R. 40, Pls.' Resp. to DEE Mot. Dismiss at 4–7. In their responses to both motions to dismiss, however, Plaintiffs rely solely on cases holding at *summary judgment* that defendants who should know they might be members of the controlled group to have waived the opportunity to contest their membership by failing to institute arbitration. *Id.* (citing *Tr. Of Suburban Teamsters of N. Ill. Pension Fund v. E Co.*, 914 F.3d 1037, 1039 (7th Cir. 2019); *Chicago Truck Drivers v. El Paso CGP Co.*, 525 F.3d 591, 597–98 (7th Cir. 2008); *Cent. States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1373 (7th Cir. 1992))). Plaintiffs fail to cite—and the Court is unaware of—any cases holding, on a *motion to dismiss*, that a party who did not receive notice waived its rights to contest its membership in a controlled group by failing to initiate arbitration.

The Court finds that the question of waiver is more appropriate at the summary judgment stage than on a motion to dismiss. But no matter, because as discussed below, the Court agrees with Plaintiffs that the SAC adequately pleads that each of the Lee Defendants was a trade or business under common control with the withdrawing employer who received notice (Lee Lumber), and thus are jointly and severally liable for the withdrawal liability of Lee Lumber. Pls.' Resp. Lee Mot. Dismiss at 1–2.

## B. Child Trusts

Lee Defendants argue that the SAC fails to sufficiently allege that the Child Trusts' lease of the Property to Lee Lumber constitutes a trade or business such that the Child Trusts could be considered members of a controlled group of Lee Lumber

under ERISA. Lee Mot. Dismiss at 4–6. Lee Defendants note that an activity does not constitute a "trade or business" unless it is performed: (1) for the primary purpose of income or profit and (2) with continuity and regularity. *Id.* at 4 (citing *Groetzinger*, 480 U.S. at 35). Merely holding a lease, assert Lee Defendants, is not sufficient to constitute a "trade or business" under § 1301(b)(1). *Id.* at 5–6 (citing *Central States v. Fulkerson*, 238 F3d. 891 (7th Cir. 2001)). Here, Lee Defendants contend that Plaintiffs have merely alleged that Lee Lumber leased the Property from the Child Trusts, without any allegations regarding the nature of the Child's Trusts ownership activity. *Id.* The Court finds that the Child Trusts' motion ignores well-settled law.

A decade ago, the Seventh Circuit stated that "leasing property to a withdrawing employer is a 'trade or business' within the meaning of the MPAA." *SCOFBP*, 668 F.3d at 878–79. This principle was reiterated two years later in *Messina Prod.* 706 F.3d at 882. In *Messina*, the Seventh Circuit explained that "where the real estate is rented to or used by the withdrawing employer and there is common ownership, it is improbable that the rental activity could be deemed a truly passive investment." *Id.* Rather, "[i]n such situations, the likelihood that a true purpose and effect of the 'lease' is to split up the withdrawing employer's assets is self-evident.*"* *Id.* Yet Lee Defendants' motion fails to mention, much less distinguish *SCOFBP* or *Messina. See generally* Lee Mot. Dismiss.

Defendants have not cited, nor is the Court aware of, any authority holding that a plaintiff must allege that a formal lease exists or specifics about the nature of the lease between the withdrawing employer and entity leasing the property. The

only case cited by Defendants, *Central States v. Fulkerson*, 238 F.3d 891, 894–95 (7th Cir. 2001) does not support Defendants' contention. True, *Fulkerson* involved a lease. *Id.* However, that case is distinguishable because the defendants in *Fulkerson* did not lease the properties to the entities that incurred the withdrawal liability. *Id.* By contrast, here, Plaintiffs allege that the Child Trusts leased the Property to Lee Lumber, the entity that incurred the withdrawal liability. SAC ¶¶ 48–49. Nothing in *Fulkerson* requires the existence of a formal lease to establish the owner of property as engaging in the activity of a "trade or business" for purposes of attributing withdrawal liability to said owner as a controlled group member with the withdrawing employer operating on its property. Rather, "renting property to a withdrawing employer is categorically a trade or business." *SCOFBP*, 668 F.3d at 879; *see also* Gradei's Express, 2020 WL 1530737, at *4–5 (collecting cases). That is not to say that the MPAA imposes liability for a "withdrawing employer on purely passive investment entities, including those that invest in real estate." *Messina Prod.*, 706 F.3d at 882. But, as noted above, where there is common ownership between the lessor and the withdrawing employer lessee, "it is improbable that the rental activity could be deemed a truly passive investment." *Id.*

Here, Plaintiffs have alleged that Lee Lumber and the Child Trusts had common ownership, namely the Baumgartens. SAC ¶¶ 15–16, 19–20. Plaintiffs have further alleged that the Child Trusts leased the property on which the withdrawing employer operated, to the withdrawing employer. *Id.* ¶¶ 13, 22–23, 48–49. Lee Defendants dispute these allegations, arguing that the Child Trusts never entered

12

into a lease with Lee Lumber, did not own the Property to earn a profit but rather held the property as a passive investment, and that Lee Lumber never paid the Child Trusts any rent. Lee Mot. Dismiss at 6. Lee Defendants' denials and contentions about the nature of the lease may be issues subject to a motion for summary judgment, but are not proper on a Rule 12(b)(6) motion. *See Adams v. Detella*, 248 F.3d 1156 (7th Cir. 2000) (whether allegations in a complaint are true is appropriately decided on a motion for summary judgment, not a motion to dismiss).

Accordingly, the Court finds, that in viewing the allegations of the SAC in the light most favorable to Plaintiffs (as it must), that Plaintiffs have adequately pled that the Child Trusts' lease of the Property to Lee Lumber constituted a "trade or business activity" subject to common control for purposes of withdrawal liability and thus the Child Trusts can be jointly and severally liable with Lee Lumber, the withdrawing employer. *See Gradei's Express*, 2020 WL 1530737, at *5.

## C. The Baumgartens' Alter-Ego Liability

Next, Lee Defendants argue that Plaintiffs have failed to sufficiently allege that the Baumgartens are alter-egos of the Child Trusts. Lee Mot. Dismiss at 7–8. Defendants contend that Plaintiffs rely solely on the allegations that the Baumgartens are the trustees and beneficiaries of their respective Child Trusts, which is insufficient to establish the Baumgartens' alter-ego liability because a property owned by a trust is not owned by its beneficiaries. *Id.* at 8 (citing *Doyle v. Hood*, 112 N.E.3d 1040, 105354 (Ill. App. Ct. 2018)). Lee Defendants contend that trust assets are owned by trusts, and beneficiaries hold beneficial interests rather

13

than ownership interests. *Id.* (citing *In re Marriage of LaRocque*, 107 N.E.3d 349, 356, 365 (Ill. App. Ct. 2018)).

But neither case cited by Lee Defendants evaluates alter-ego liability under ERISA. The Court agrees with Plaintiffs that the Federal Regulations governing ERISA make it clear that the Baumgartens can be found individually liable for Lee Lumber's withdrawal liability because they are beneficiaries of their respective Child Trusts. Pls.' Resp. Lee Mot. Dismiss at 13. Under the Regulations, a beneficiary of a trust is attributed ownership of the trust for purposes determining ownership interests and for withdrawal liability purposes. 26 C.F.R. §1.414(c)-4(b)(3)(i) ("An interest in an organization (hereinafter called an 'organization interest') owned, directly or indirectly, by or for [a] . . . trust shall be considered as owned by any beneficiary of such . . . trust who has an actuarial interest of 5 percent or more in such organization interest, to the extent of such actuarial interest."). Plaintiffs also argue that a brother-sister controlled group exists for withdrawal liability purposes under ERISA. Under 26 C.F.R. § 1.414(c)-2(c)(1), a brother sister-controlled group exists among "two or more organizations conducting trades or businesses if (i) the same five or fewer persons who are individuals . . . or trusts own (directly and with the application of § 1.414(c)–4) a controlling interest in each organization, and (ii) taking into account the ownership of each such person only to the extent such

14

ownership is identical with respect to each such organization, such persons are in effective control of each organization."

Here, Plaintiffs have alleged that Richard Baumgarten is the "sole beneficiary, sole trustee and representative of the Richard Trust," SAC ¶ 16, and that Arthur Rand Baumgarten is the "sole beneficiary, sole trustee and representative of the Arthur Trust," *id.* ¶ 20. Plaintiffs have also alleged that the Baumgartens each owned 50% of Lee Lumber, SAC ¶¶ 15, 19, and the Baumgartens, as beneficiaries of the Child Trusts, each owned 50% of the Property, *id.* ¶¶ 17, 21. Therefore, the leasing activity of the Baumgartens and the Child Trusts is under "common control" with the trade and business of Lee Lumber as part of the Lee Lumber controlled group.[5] *See Trustees of Suburban Teamsters of N. Illinois Pension Fund v. E Co.*, 2018 WL 1427172, at *7 (N.D. Ill. Mar. 22, 2018), *aff'd,* 914 F.3d 1037 (7th Cir. 2019) (citing *Central States, Se. & Sw. Areas Pension Fund v. White*, 258 F.3d 636, 641 (7th Cir. 2001); *Cent. States Se. & Sw. Areas Pension Fund v. Miller*, 868 F. Supp. 995, 1000 (N.D. Ill. 1994)). Together, these allegations are sufficient under the Federal Regulations to adequately state a claim for relief against the Baumgartens individually. *See id.* (holding individuals individually liable for withdrawal liability where individuals, individually and as trustees, owned 100% of rental activity associated with the withdrawing entity that was owned by the same individuals).

---

[5] Additionally, as discussed above, *see supra* Section I.B, Plaintiffs have sufficiently pled that the Child Trusts were engaged in a "trade or business" activity by leasing the Property to Lee Lumber.

15

### D.    Fraudulent Transfer

Last, Lee Defendants posit that although Plaintiffs only assert two counts in their SAC, they appear to assert a claim for fraudulent transfer based on the Child Trust's deed-in-lieu transfer of the Property to Defendant DEE-Illinois. Lee Mot. Dismiss at 9. A review of the SAC reveals that Plaintiffs do not assert a claim of Fraudulent Transfer,[6] and Plaintiffs do not contend that they have alleged such a claim in their response. *See generally* SAC; Pls.' Resp. Lee Mot. Dismiss at 14–15 (arguing that Lee and the Child Trusts effectuated the fraudulent transfer to evade or avoid withdrawal liability, thus making DEE-Illinois jointly and severally liable). Therefore, the Court holds that the SAC does not allege a standalone fraudulent transfer claim under Illinois law, and Plaintiffs waived their right to allege that such a claim was included in the SAC by failing to address Lee Defendants' argument in their response. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

### II.    DEE-Illinois Motion to Dismiss

### A. Notice

As they did in their response to Lee Defendants' Motion to Dismiss, Plaintiffs argue in response to DEE-Illinois' Motion to Dismiss that DEE-Illinois waived its right to contest its membership in the controlled group by failing to initiate

---

[6]The elements of a fraudulent transfer claim under Illinois are Illinois' Uniform Fraudulent Transfer Act are: (1) the transferor made a voluntary transfer; (2) at the time of the transfer, the transferor had obligations elsewhere; (3) the transferor made the transfer without receiving a reasonably equivalent value in exchange; and (4) after the transfer the transferor failed to retain sufficient property to pay his indebtedness. 740 ILCS 160/5(a)(2), 160/6(a).

arbitration. Pls.' Resp. DEE Mot. Dismiss at 4–7. But as discussed above, *see supra* Section I.A, the Court finds that the question of waiver is more appropriate at the summary judgment stage than on a motion to dismiss. That is even more true in the case of DEE-Illinois, which is not under common ownership or management like Lee Defendants, *see* SAC ¶ 30, and therefore has a more plausible argument that it falls into the waiver exception articulated by the Seventh Circuit in *E Co.*, 914 F.3d 1039 ("Our case law has recognized a narrow exception to this general rule of forfeiture for a party who 'had absolutely no reason to believe that they might be deemed members of a controlled group' but is nonetheless sued and alleged to be liable for another party's withdrawal liability based on ERISA's 'controlled group' provision.") (citing *Slotky*, 956 F.2d at 1373).

### B. Evade or Avoid Liability

Plaintiffs allege in the SAC that the sale of the Property from the Child Trusts to DEE-Illinois was a fraudulent transfer with the intent to evade or avoid withdrawal liability under Section 4212(c) of ERISA, 29 U.S.C. 1392(c), and therefore, the transfer can be ignored for purposes of withdrawal liability. Pls.' Resp. DEE Mot. Dismiss at 7. DEE-Illinois argues that Plaintiffs do not allege sufficient facts to support this theory. DEE Mot. Dismiss at 4; R. 53, DEE Reply at 4. The Court disagrees.

The MPPAA added this Section to ERISA "to ensure that employers live up to the obligations they owe to the pension fund and to the employees who participate in it." *Bd. of Trustees of the Auto. Mechanics' Loc. No. 701 Union & Indus. Pension Fund*

*v. Joyce*, 2015 WL 1888005, at *2 (N.D. Ill. Apr. 24, 2015) (internal citations and quotations omitted). "When an employer violates § 1392(c), liability will be determined as if the transaction to evade or avoid liability never occurred, and a plaintiff can reach those assets that were transferred in order to evade or avoid liability, *as well as the parties to whom they were improperly transferred*." *Id.* (citations and quotations omitted) (emphasis in original).

To adequately allege an evade or avoid claim, a plaintiff must allege "(1) the consummation of a transaction that allows [d]efendants to evade or avoid withdrawal liability, and (2) that a principal purpose of the transaction was to evade or avoid withdrawal liability." *Id.* It need not be the only purpose, just one that weighed heavily in the organization's thinking. *Santa Fe Pac. Corp. v. Cent. States, Se. & Sw. Areas Pension Fund*, 22 F.3d 725, 727 (7th Cir. 1994).

In addition to satisfying Rule 12(b)(6) standards, at least some courts in this District have held that § 1392(c) claims are subject to the heightened pleading standard for fraud claims set forth in Rule 9(b). *See Joyce*, 2015 WL 1888005, at *2; *Bd. of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Illinois Range, Inc.*, 186 F.R.D. 498, 503 (N.D. Ill.), *adopted in part,* 71 F. Supp. 2d 864 (N.D. Ill. 1999). *But see Cent. States, Se. & Sw. Areas Pension Fund v. King Auto Fin., Inc.*, 2012 WL 4364310, at *3–4 (N.D. Ill. Sept. 19, 2012) (applying Rule 8(a) standard). Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." FED.

R. Civ. P. 9(b). As noted above, Rule 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). But the Court need not definitively decide which is the appropriate pleading standard, as the Court finds that that Plaintiffs have satisfied Rule 9(b)'s more demanding requirements.

DEE-Illinois argues that Plaintiffs allege only conclusions, and no facts, to support their evade or avoid claim. DEE Reply at 4. DEE-Illinois also argues that the only case cited by Plaintiffs in support of their evade or avoid claim, *King Auto Fin.*, 2012 WL 4364310, is distinguishable because the parties in that case were part of the same controlled group based on the brother-sister theory. DEE Reply at 4. DEE-Illinois is correct that *King* found that four of the five defendants were part of a controlled group based on the brother-sister formulation or based on common control, but it did not so hold as to the fifth defendant (the WJB Trust). 2012 WL 4364310, at *3–4. So *King* is instructive to the extent that it held—under Rule 8(a)'s notice pleading standard—that the WJB Trust could be held liable under evade or avoid theory, where the defendant contributing employer: (1) sold its assets; (2) permanently closed all of its operations; (3) distributed the proceeds of the sale to controlled group defendants (including the WJB Trust) without receiving any consideration; and (4) became unable to pay its withdrawal liability as a result. *Id.* at *4.

Similarly, here Plaintiffs allege that: (1) Lee Lumber, through the Child Trusts, transferred its most valuable asset, the Property, to DEE-Illinois, SAC ¶¶ 44,

85–88; (2) Lee Lumber permanently closed all of its operations, SAC ¶ 40; (3) Lee Lumber did not receive adequate consideration for the Property (DEE-Illinois reduced Lee's debt to it by $800,000 but subsequently listed the Property for sale for $3.2 million), SAC ¶¶ 44, 88–89; and (4) Lee is unable to pay its withdrawal liability, *see* SAC ¶ 77.

But importantly, Plaintiffs also allege that the Child Trusts transferred the Property to DEE-Illinois in consideration of Lee's debt to DEE-Illinois on January 7, 2019, just three days before the Pension Fund issued notice and demand for withdrawal liability on January 10, 2019. SAC ¶¶ 44–45. DEE-Illinois argues that because the transfer occurred *before* the Pension Fund issued its notice and demand for withdrawal liability undermines Plaintiffs' argument that the principal purpose of the transfer was to evade or avoid liability. DEE Reply at 4. The Court disagrees. Plaintiffs allege that, in the several months before the transfer, Lee had requested a settlement of its estimated withdrawal liability in July 2018, which the Pension Fund rejected in September 2018 because Lee had not yet triggered such liability, and Lee subsequently closed and ceased making contributions, thus triggering its withdrawal of liability on November 1, 2018, after which Lee and Plaintiffs exchanged written statements of business affairs in November and December 2018. SAC ¶¶ 38–43. Although Plaintiffs had not yet sent Lee a notice and demand for withdrawal of liability at the time of the transfer of the Property, Lee had actively engaged in the process to determine its withdrawal liability and the Court finds that it is reasonable

based on Plaintiffs' allegations to infer that Lee knew such a notice and demand was forthcoming.

Relevant to this claim, Plaintiffs also allege that DEE is managed by the Baumgartens' spouses, and that "the transfer of the Property by the Child Trusts to Dee-Illinois amounted to a fraudulent transfer with the intent to evade or avoid withdrawal liability" under § 1392. SAC ¶¶ 30, 90. True, some of Plaintiffs' allegations are conclusory, but together, the SAC alleges that Lee knew about withdrawal liability, conspired to avoid withdrawal liability, and intended the transaction to be a means of avoiding withdrawal liability. Other courts in this District have held such allegations to be sufficient, and have noted that because Plaintiffs are dependent on defendants' representations to allege fraud, courts should "not require plaintiffs to include in their pleadings information only available from defendants through discovery." *Illinois Range*, 186 F.R.D. at 503 (citing *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1058 (2d Cir. 1993)). Here, Plaintiffs were not part of the negotiations between the Child Trusts, Lee, and DEE-Illinois for the transfer from the property or reduction of Lee's debt, so "a more particularized account of the fraud claims [can] only be established through discovery." *Id*. Plaintiffs' allegations supporting their evade or avoid claim are similar to those held to be sufficient by other courts under Rule 9(b). *See Joyce*, 2015 WL 1888005, at *2; *Illinois Range*, 186 F.R.D. at 503.

Therefore, the Court finds that Plaintiffs have put DEE-Illinois on fair notice as to the claims and the factual basis for them. Plaintiffs pled the elements of the

claim—a transaction with the purpose being to avoid liability, and additionally pled both knowledge of the withdrawal liability and intent to avoid it, thus meeting Rule 9's liberal pleading requirements for knowledge and intent. Plaintiffs have sufficiently alleged an ERISA evading and avoiding liability claim.[7]

## Conclusion

For the foregoing reasons, the Court denies all Defendants' Motions to Dismiss. [38], [39]. The Court refers discovery supervision, including setting all deadlines, and settlement matters to Magistrate Judge Valdez.

Dated: March 12, 2021

_____

United States District Judge
Franklin U. Valderrama

---

[7]Because Plaintiffs have adequately pled an evade or avoid claim against DEE-Illinois, the Court need not address its alternative theory to impose liability on DEE-Illinois, that DEE-Illinois is an alter-ego of the Child Trusts and/or the Property and/or Arthur Rand Baumgarten and Richard Baumgarten and along with Lee Defendants, is liable to Plaintiffs. SAC ¶¶ 91–92. However, based on the parties' briefs and case law, the Court finds it unlikely that the allegations in the SAC sufficiently allege that DEE-Illinois is an alter ego of Lee Defendants.

22